IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DONALD P. SCHMITZ, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CV3299 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | MEMORANDUM AND ORDER ON |
| | ) | DEFENDANT'S MOTION FOR |
| Defendant. | ) | SUMMARY JUDGMENT |
| | ) | |

On December 18, 2006, the plaintiff, Donald P. Schmitz, filed a complaint against the defendant, United States of America, asserting a claim for damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-2680. (See filing 1.) Now before me is the defendant's motion for summary judgment. (See filing 27.) For the following reasons, I find that the defendant's motion must be denied.

### I. BACKGROUND[1]

At relevant times, the plaintiff was a resident of Norfolk, Nebraska, and the defendant "occupied and was in control of the U.S. Postal Service Office located at 401 North 4th Street, in

---

[1] The local rules require parties moving for summary judgment to submit a "statement of material facts" consisting "of short numbered paragraphs." NECivR. 56.1(a)(1)-(2) (emphasis omitted). For the most part, the defendant's statement of facts fails to comply with this rule. Instead of submitting a set of "short numbered paragraphs," the defendant has submitted pages of long, unnumbered paragraphs and lengthy excerpts of deposition testimony. This frustrates the plaintiff's ability to satisfy his obligation to address each of the facts put forth by the defendant–and, if necessary, controvert those facts–in an organized fashion. See NECivR 56.1(b)(1). In fact, the plaintiff has, quite understandably, responded to the defendant's statement of facts with a "narrative" of his own. As a result, in order to determine which facts are admitted and which are controverted, I must hunt through the narratives submitted by the parties in search of any disagreements. This is not the arrangement contemplated by Nebraska Civil Rule 56.1.

In the future, the parties, and the defendant in particular, should strive to comply more faithfully with this court's local rules.

Norfolk, Nebraska." (Def.'s Statement of Facts, filing 29 (Def.'s Facts), ¶¶ 2-3.) On the afternoon of January 3, 2005, at approximately 3:05 p.m., the plaintiff arrived at the post office to collect his mail. He recalled that there was not anything to his left when he exited his vehicle–that is, "there was plenty of space to open his door." (Id. at 3.) He recalled too that there was "plenty of space to see what was on the ground on the parking lot beneath [his] feet." (Id.) As he approached the post office, however, the plaintiff slipped and fell. During his deposition, the plaintiff offered the following description of the accident:

> A.  Well, I remember getting out of the car and walking forward, and I – my left foot went on the curb and then everything happened so fast, it – it slipped and I went down and fell on this side of my face (indicating).
>
> Q.  You're gesturing to your right eye?
>
> A.  My right side, yes . . . . And the next think I knew, I was – I knew – I knew I was hurt. I didn't know how bad.
>
>     . . . .
>
> A.  I remember putting my foot on the curb –
>
> Q.  Yes.
>
> A.  – and the next thing I knew I was on the – I was on the pavement. I was – my foot went and I went like this (indicating).
>
> Q.  Is your testimony that you – that your foot slipped?
>
> A.  Yes, Yes, it did.
>
> Q.  Yes. And had you seen any ice or any slickness before – before that?
>
> A.  No. No, I hadn't.
>
> Q.  Do you –
>
> A.  Not that I paid any attention to.
>
> Q.  . . . Do you see any suggestion of what you think is ice in that photo [marked as Exhibit 1]?
>
> A.  No, and I didn't see it then. And the reason being you don't see black ice.

> Q. You think you stepped on some black ice?
>
> A. Black ice, yes, I do.

(Def.'s Index, filing 28, Ex. 1, Schmitz Dep. at 25:18-26:1, 27:1-23.) After his slip, some passers-by helped the plaintiff to his car, and the plaintiff drove home. (Def.'s Facts at 5; Pl.'s Statement of Facts, filing 32 (Pl.'s Facts) at 2.) After the plaintiff arrived at home, his wife drove him to an emergency care facility. (Pl.'s Facts at 2.)

Mickey Coke has been employed as a labor custodian at the post office since approximately 1988. (Def.'s Facts at 6.) In his deposition, Coke described his recollection of the weather and the conditions of the sidewalks on day of the plaintiff's accident:

> A. I remember it raining and that's what made it slick, but then I come to work and done all the salt and by noon the sidewalks were dry.
>
> Q. Okay.
>
> A. I mean, completely dry.
>
> Q. Okay. Do you remember what the temperatures were on those three days before the accident? Did they ever get below freezing, to your knowledge?
>
> A. During the night I think they did, that's why it froze.
>
> Q. Okay. Do you remember any snowfall?
>
> A. No.
>
> Q. Just rain?
>
> A. Rain, yes.

(Def.'s Index, filing 28, Ex. 2, Coke Dep. at 20:22-21:11.) Coke added that "there was probably ice on" the curb on the morning of January 3, but that "as far as [he] know[s]," the curb was completely dry after lunch. (Def.'s Facts at 7, 10.) He also testified that he put down another application of salt[2] at 3:00 because the postmaster believed that more rain would fall on the next

---

[2]The witnesses and attorneys appear to use the term salt, ice-melt, and de-icer interchangeably. (See, e.g., Def.'s Index, Ex. 2, Coke Dep. at 17:22-25.)

day.  (Id. at 9, 12.)

The postmaster, Peter J. Book, was "responsible for the supervision of the overall maintenance of the exterior grounds of the Post Office."  (Def.'s Facts at 11.)  More specifically, he was responsible for supervising the clearing of ice and snow from the sidewalks and parking areas during the winter.  (Id.)  Book recalled that "there had been some light precipitation early" on the morning of January 3.  (Def.'s Facts at 12.)  In his deposition, Book testified that he had no specific recollection of the condition of the curb on that morning.  (Pl.'s Facts at 4 (citing Pl.'s Index, filing 33, Book Dep. at 60:20-24).)  However, in a declaration submitted in support of the defendant's motion for summary judgment, Book stated that the morning precipitation "caused some icing of the . . . curb."  (Def.'s Index, filing 28, Ex. 3, Book Dec. ¶ 5.)  Book's declaration also states that Coke applied ice-melt to the sidewalks and curb on the morning of January 3, and that he (Book) observed the sidewalks and curb "to be completely clear of ice and moisture and completely dry by noon" (Def.'s Facts at 12).  It seems to me, however, that this statement conflicts with other evidence in the record.  First, Book did not testify in his deposition that ice-melt had been applied to the curb.  In response to counsel's question whether ice-melt was "used on the curb," Book responded, "Whether or not it was actually applied to the curb, I mean, it may not be specifically visible on the curb because it is rounded."  (Pl.'s Index, filing 33, Book Dep. at 62:16-19.)  Counsel then asked the following question, and Book provided the following answer:

> Q. Normally would you instruct Mick or your maintenance person to put the de-icer on the curb?
>
> A. We try to do that sometimes by hand if there is ice, but the curb, in itself, is very difficult to rid of ice because it is rounded.  So, when we do that, we typically do it by hand, but in small amounts.

(Pl.'s Index, filing 33, Book Dep. at 62:21-63:1.)  When asked whether he applied ice-melt to the curb by hand on the date in question, Coke responded, "I don't know, I can't remember, but I probably did."  (Def.'s Index, filing 28, Ex. 2, Coke Dep. at 27:22-28:4.)

Second, the record contradicts Book's claim that the curb was "completely clear of ice and moisture and completely dry by noon."  In his deposition, Book testified that it was possible that black ice was present on the curb, and he seemed to acknowledge that it was possible that

4

there was noticeable ice on the curb. (See Pl.'s Index, filing 33, Book Dep. at 71:22-72:2.) These statements were made in a context that strongly suggests that Book was referring to the presence of ice on the curb at the time of, or perhaps after, the plaintiff's accident. (See id. at 69:20-72:2.) Moreover, sometime after the plaintiff's fall, Book wrote in an accident report that there was "[p]ossible ice on painted curb face." (Pl.'s Index, filing 33, Book Dep., Ex. 2 at 2.) This report also states,

> I went to the parking lot and side walk area and did find 4 or 5 droplets of blood [an]d photographed the entire area where the fall happened. There was no visible moisture, [ic]e or slick spots in the lot or on the sidewalk only accumulated "blue ice melt" which I [ha]d my maintenance men apply around 3:00 PM the same afternoon. The only area of concern [wa]s the rounded yellow painted curb face which did have some icing where the "ice melt" had [no]t, nor could not have properly worked.

(Id.; see also Pl.'s Index, Book Dep. at 74:19-25.)[3]

At approximately 4:45 on January 3, Book received a telephone call from Joann Schmitz, who identified herself as the plaintiff's wife. (Def.'s Facts at 12-13.) Joann told Book that her husband had fallen approximately one-half hour earlier as he stepped up on the curb outside the post office. (Id. at 13.) Immediately after this call concluded, Book took photographs of the "sidewalk area" outside the post office. (Id.) One of these photos has been included in the record. (See Def.'s Index, filing 28, Ex. 3, Book Dec., Ex. 1.)

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining

---

[3]The text appearing on the left margin of this portion of the report is partially illegible. I have completed the text using my best guess as to the missing letters, and I have indicated my additions with brackets.

whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). However, "[t]he district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993).[4] If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

### III.  ANALYSIS

As noted above, the plaintiff's complaint is brought pursuant to the FTCA. "The FTCA waives federal sovereign immunity and grants federal district courts jurisdiction over a certain category of claims against the United States only to the extent that a private person, under like circumstances, would be liable to the plaintiff under the substantive law of the state where the alleged wrongful conduct took place . . . ." Green Acres Enterprises, Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005). Because the plaintiff's injury occurred in Nebraska, the plaintiff's claim must be analyzed under Nebraska law. E.g., Budden v. United States, 15 F.3d 1444, 1449 (8th Cir. 1994). See also 28 U.S.C. § 1346(b)(1).

The parties are in agreement that, under Nebraska law, a "lawful visitor [who] claims that he or she was injured by a condition on the owner or occupier's premises" may hold the owner or occupier liable if he or she can prove the following:

---

[4]In opposition to the defendant's motion for summary judgment, the plaintiff has referred me to a portion of his own deposition testimony wherein he describes statements made to him by a DeeDee Kalin concerning the conditions at the post office on the day in question. (See Pl.'s Facts at 3.) These statements, which are offered to prove the conditions at the post office on the day of the accident, are hearsay, and I cannot consider them in connection with the instant motion.

> (1) the owner or occupier either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the owner or occupier should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the owner or occupier failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the lawful visitor.

Aguallo v. City of Scottsbluff, 678 N.W.2d 82, 89 (Neb. 2004).

The defendant argues that it "is entitled to summary judgment in the present premises liability case because Mr. Schmitz has not and cannot prove the first essential element: namely, that the United States 'created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition.'" (Def.'s Br., filing 29, at 17.) In support of this argument, the defendant asserts that "Mr. Schmitz does not contend that the United States created the condition that caused his slip on the curb," and that Mr. Schmitz "has also offered no evidence that the United States knew of any slickness on the curb in advance of his accident, nor that the United States would have discovered the slickness through the exercise of ordinary care." (Id. at 18.) I disagree. First, there is evidence that Book knew of "slickness on the curb" on the morning of the accident. (See Def.'s Index, filing 28, Ex. 3, Book Dec. ¶ 5.) Second, it seems to me that there is a genuine issue as to whether the "slickness" remained on the curb at the time of the plaintiff's accident. Book does state in his declaration that after Coke applied the ice-melt during the morning of January 3, Book observed "that the sidewalks and the curb . . . appeared to be completely clear of ice and moisture and completely dry by noon." (Def.'s Index, filing 28, Ex. 3, Book Dec. ¶ 5.) Book's deposition testimony is more equivocal, however. Specifically, his testimony can be reasonably read to state that he believed it possible that black ice and "noticeable ice" could have been on the curb at the time of the accident. In addition, his accident report can be reasonably read to state not only that ice remained on the curb after the accident, but also that Coke's ice-melt was not, and could not have been, effective to remove the ice from the rounded curb face. Thus, I find that a genuine issue remains for trial with respect to the first element of the plaintiff's case, and therefore I must reject the defendant's argument that it is entitled to summary judgment.

I note in passing that the defendant relies upon the following excerpt from Cloonan v. Food-4-Less of 30th and Weber, Inc., 529 N.W.2d 759, 763 (Neb. 1995), in support of its motion for summary judgment:

> Cloonan failed to adduce any evidence that any alleged dangerous condition of Food-4-Less' sidewalk, whether caused by ice or some other slippery substance, was visible or apparent to either Henderson or to Cloonan. Food-4-Less, through its employees, is not required to see what cannot be seen by other human beings. Because Cloonan failed to present any evidence that the alleged dangerous condition of the sidewalk was visible and apparent, Cloonan has failed to prove that Food-4-Less had constructive notice that the sidewalk in front of the store was in a dangerous condition.

(emphasis added). In Cloonan, the plaintiff was required to prove that the defendant had constructive notice of the condition that caused her fall because there was no evidence that the defendant had actual notice of the condition. As I have explained above, however, in the instant case there is a genuine issue as to whether the defendant had actual knowledge of the icy condition of the curb. Therefore, I am not persuaded that the defendant's motion for summary judgment ought to be granted based on the foregoing language in Cloonan.

Finally, the defendant suggests that the "undisputed evidence is that the agents and employees of the Post Office took reasonable care to make the premises safe for visitors to the Norfolk Post Office on the afternoon of January 3, 2005." (Def.'s Br., filing 29, at 18.) In other words, the defendant argues that the plaintiff is unable to establish element four of his case. See Aguallo, 678 N.W.2d at 89. The Nebraska Supreme Court has held,

> Among the factors to be considered in evaluating whether a landowner or occupier has exercised reasonable care for the protection of lawful visitors will be (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection.

Aguallo, 678 N.W.2d at 88-89 (quoting Heins v. Webster County, 552 N.W.2d 51, 57 (Neb. 1996)). The defendant has not argued that when the foregoing factors are considered, there is no genuine issue for trial and that the defendant is entitled to judgment as a matter of law. (See Def.'s Br., filing 29, at 18.) Instead, the defendant's argument seems to be that element four

cannot be satisfied because Coke spread ice-melt upon the "walks and curbs" of the post office on the morning of the accident; Coke found the "walks and curbs" to be completely dry by noon; and Book asked Coke "to treat the sidewalk and curb near the front door of the Post Office to be certain that the sidewalk and the curb were free from ice." (Def.'s Br., filing 29, at 18.) However, there is evidence that ice-melt is wholly ineffective on the rounded face of curbs; there is conflicting evidence that, to be effective, ice-melt must be applied by hand to the curbs–and Coke did not remember whether he applied any ice-melt to the curbs by hand on the date in question; and there is evidence that could support a finding that the curbs were not, in fact, free of ice at the time of the accident or at the time of Book's investigation of the accident scene. Under the circumstances, I am not persuaded that there is no genuine issue as to whether reasonable care was taken to protect the plaintiff against danger.

**IT IS ORDERED** that the defendant's motion for summary judgment, filing 27, is denied.

Dated May 1, 2008.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge